**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| JAMES YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14-CV-04097-NKL |
| | ) | |
| FLAGSTAR BANK, F.S.B., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Flagstar Bank F.S.B.'s motion to dismiss for failure to state a claim [Doc. 4] is GRANTED.

**I.      Background**

This case concerns Young's home mortgage and a March 2014 attempted foreclosure. Young pleads that Flagstar breached a contractual arrangement between the parties relating to his mortgage, and intentionally caused him emotional distress. [Doc. 1-2.]

Young purchased real property in Eldon, Missouri in 2008.[1] He signed a 30-year Note, or mortgage loan, secured by a Deed of Trust on the property. The Note and Deed provided that in the case of a borrower's default, including failure to timely make monthly payments, the lender could require immediate payment in full of the loan. [Doc. 4-2, pp. 1-2, ¶ 6; Doc. 4-3, p. 5, ¶ 9.] If the borrower defaulted and the lender required immediate payment in full, the lender could invoke the power of sale and any other remedies permitted by law, and foreclose on the property. [Doc. 4-3, at

---

[1]      For purposes of ruling on Flagstar's motion to dismiss, the Court accepts as true the allegations in Young's complaint. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). In addition, the Court considers—as part of the pleadings—the documents referenced in the complaint. *See Enervations, Inc. v. Minnesota Mining and Mfrg. Co.*, 380 F .3d 1066, 1069 (8th Cir. 2004). Such documents include the letter or trial reinstatement plan Young attached to his complaint [Doc. 1-2], and the Mortgage Note, Deed of Trust, Assignment of Mortgage, 2012 Reinstatement, Appointment of Successor Trustee, and 2014 Reinstatement, which Flagstar Bank attached to its motion to dismiss  [Docs. 4-2 through 4-7, Exhibits A through F].

p. 7, ¶ 18.]  But the borrower had the right, with some exceptions, to be "reinstated" by tendering in a lump sum all amounts required to bring the account current. [*Id.* at p. 6, ¶ 10.]  "If circumstances occur[ed] that would permit the [l]ender to require immediate payment in full, but [the lender] did not require such payments, [the lender did] not waive its rights with respect to subsequent events." [*Id.* at p. 5, ¶ 9(c); *see also* Doc. 4-2, p. 2, ¶ 6.]

Between May and September 2012, Young failed to make monthly payments, totaling about $4,000, on his loan. [Doc. 4-5, pp. 1-2.]

The Deed of Trust was assigned in September 2012 to Flagstar, which then began foreclosure proceedings.  At Young's request, Flagstar gave him an opportunity to reinstate the loan, which Young accomplished, halting foreclosure.

But sometime in or after October 2012, Young again failed to make monthly payments. Flagstar sent Young a notice of default and acceleration of the loan.  At Young's request, Flagstar gave him another opportunity to reinstate the loan if Young met the terms of a "trial [reinstatement] plan" or agreement.  [Doc. 1-2, p. 7.]  The parties' agreement provided that Young's then-current arrearages totaled $8,455.20.  It also provided that the loan would be reinstated if Young paid $1,538.88 in total, to be paid in equal installments on April 1, May 1, and June 1, 2013.  Young's account would "be allowed to remain delinquent as long as the terms of th[e] agreement [were] followed and abided by."  [Doc. 1-2, p. 7.]  "Late charges accrued during the agreement [would] be eliminated when [the] agreement [was] completed."  [*Id.*]  The agreement further provided, in relevant part:

- This account will not be considered current after this agreement ends.  Additional documentation will be required to determine your alternatives to cure the delinquency.  Please contact the office no later than Jun[e] 2, 2013 as we may continue your loss mitigation review for a Home Affordable Modification.  [*Id.*]

- [N]othing herein shall in any way impair the security now held on the…loan, nor shall waive, annul, vary or affect any provision, condition, covenant or agreement contained in the loan documents, including…the Note, Deed of Trust…, or Mortgage, nor affect or impair any rights, powers, remedies under the Note, Deed of Trust…, or Mortgage. [*Id.* at p. 8]

Young alleges he "followed and abided by all the terms of the agreement." [Doc. 1-2, p. 4, ¶ 8.[2]]

On October 10, 2012, Flagstar was replaced by a Successor Trustee, South & Associates, P.C., a debt collector, and an Appointment of Successor Trustee was recorded a week later. [Doc. 4-6, Exhibit E.] Young was not notified of the appointment of a successor trustee to the Deed of Trust. [Doc. 1-2, pp. 4-5, ¶ 17.]

Foreclosure proceedings commenced again, sometime after June 2, 2013. Young was provided an opportunity to reinstate the loan by February 10, 2014. The reinstatement quote, dated January 17, 2014, reflected that Young owed about $16,700 in late payments alone. [Doc. 4-7, p. 2.] Young was sent written notice of foreclosure proceedings set for March 4, 2014. [Doc. 1-2, p. 4, ¶ 10.] The foreclosure did not proceed because Young filed suit against Flagstar in state court and on March 4, 2014 obtained a temporary restraining order against Flagstar. [Doc. 1-2.] Flagstar removed the case to this Court on April 9, 2014.

## II.    Discussion

Young fails to state a claim for breach of contract or intentional infliction of emotional distress.

The purpose of a motion to dismiss for failure to state a claim upon which relief can be

---

[2]        The only copy of the agreement appearing in the record is attached to Young's complaint. Although the copy is not signed, Young alleges it represents the agreement the parties "signed and entered." [Doc. 1-2, p. 4, ¶ 6, and pp. 7-8.] Flagstar suggests that because the copy does not reflect signatures, Young has not demonstrated that the parties entered into such agreement. [Doc. 4-1, p. 6.] But on a motion to dismiss, the Court accepts as true all factual allegations in a complaint, and so accepts as true for purposes of Flagstar's motion that the parties entered into an agreement, the substance of which is reflected in the attachment to Young's complaint.

granted is to test the legal sufficiency of the complaint. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). On a motion to dismiss, a court accepts as true all of the factual allegations in the complaint, and reviews the complaint to determine whether it shows the pleader is entitled to relief. *Id.*; Fed.R.Civ.P. 8(a)(2).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This pleading standard does not require "detailed factual allegations," *Twombly*, 550 U.S. at 555, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A pleading that offers labels, conclusions, a formulaic recitation of elements, or naked assertions devoid of factual enhancement does not suffice. *Id.* Only well-pleaded facts are accepted as true, while "[t]hreadbare recitals of the elements of a cause of action" and legal conclusions are not. *Id.* "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." *Id.* at 1950.

### A. Count I, breach of contract

To prevail on a breach of contract claim, Young must plead and prove:

> (1) the existence and terms of a contract;
>
> (2) that he performed or tendered performance pursuant to the contract;
>
> (3) breach of the contract by Flagstar; and
>
> (4) that he suffered damages.

*Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010); *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 108 (Mo. Ct. App. 2011).

With respect to third element, Young does not plead a breach by Flagstar. The agreement permitted Young to make less than full payment, through June 1, 2013, of his arrearages in exchange for a "trial" reinstatement of his loan. The trial reinstatement agreement would not cure

his delinquency; would not bring his account current after the agreement ended – by implication June 1, 2013; instructed him to contact Flagstar no later than June 2, 2013 to determine his alternatives to cure the delinquency; and did not affect the lender's rights, powers, or remedies under the Note, Deed of Trust, or mortgage, including foreclosure. The agreement *did* waive late charges that accrued during the term of the agreement, and Young does not claim Flagstar failed to honor that provision. Simply put, the agreement in its totality provided Young only brief and limited respite. He was in default during the term of the trial reinstatement and after, and by implication, Flagstar was within its rights to pursue foreclosure after June 2, 2013.

Young relies on the provision in the agreement permitting the account to "remain delinquent as long as the terms of [the] agreement [were] followed and abided by," apparently arguing that because he abided by the agreement, Flagstar was required to allow the account to remain delinquent in perpetuity. [Doc. 9, p. 4.] But there is nothing in the "trial reinstatement" agreement that permitted him to stop paying his loan merely because he made three extra payments totaling $1538.88. Such an interpretation would render other provisions of the agreement meaningless. A contract should be construed "as a whole so as not to render any terms meaningless…. A construction that gives a reasonable meaning to each term and harmonizes all provisions is preferred over a construction that renders some provisions without function or sense." *Chocorowski v. Home Depot, U.S.A.,* 404 S.W.3d 220, 239 (Mo. banc 2013) (internal citation omitted).

Here, the agreement was described as a trial agreement; it provided that additional steps would need to be taken to cure the delinquency; and it preserved the lender's right to pursue other remedies after the agreement ended. Read as a whole, the agreement at most provided for Flagstar's temporary stand-down while Young made the three installment payments. Flagstar's March 2014 pursuit of the remedy of foreclosure in view of Young's default did not breach the agreement.

Flagstar additionally argues that Young's first count can be construed as a claim for wrongful foreclosure, and that the claim fails because Young does not plead and cannot prove that he was not in default at the time of the foreclosure proceedings, a necessary element to such a claim. [Doc. 4-1, p. 4, citing *Dobson v. Mortgage Electronic Regis. Systems, Inc./GMAC Mortgage Corp.,* 259 S.W.3d 19, 22 (Mo. Ct. App. 2008).] Young denies that he plead such a claim. [Doc. 9, p. 3.] Accordingly, the Court will not address wrongful foreclosure.

Young's first count fails to state a claim for which relief can be granted.

### B. Count II, intentional infliction of emotional distress

Young's second count requires him to plead and prove that:

(1) Flagstar acted in an intentional or reckless manner;

(2) Flagstar's conduct was extreme or outrageous; and

(3) the conduct caused severe emotional distress that resulted in bodily harm.

*Gibson v. Brewer,* 952 S.W.2d 239, 249 (Mo. banc 1997). The first element of the tort requires that a defendant's conduct be solely motivated by the desire to injure the plaintiff. *Id. See also Thomas v. Special Olympics Mo., Inc.,* 31 S.W.3d 442, 443 (Mo. Ct. App. 2000) (same).

As for the second element, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Warrem v. Parrish,* 436 S.W.2d 670, 673 (Mo. 1969) (citing Restatement of Torts (2d) sec. 46, p. 73)). Wrongful conduct, alone, does not suffice. *Conway v. St. Louis County,* 254 S.W.3d 159, 165-66 (Mo. Ct. App. 2008) (same).

Young's allegations do not show he is entitled to relief. With respect to the first element, he does not allege that Flagstar's sole motivation for its conduct was the desire to injure him. Rather, he alleges Flagstar's actions were taken "in an attempt to create a financial gain for" itself. [Doc. 1-2, p. 5, ¶ 20.] With respect to the second element, he alleges that Flagstar's actions were intended "to

force [Young] to sell or refinance his real estate in order for Defendant to recover its funds under the Note." [*Id.*at p. 5, ¶ 21.] Attempting to recover its funds under the Note is in no sense outrageous and extreme, or atrocious and intolerable in a civilized community. Young's allegations concerning Flagstar's pecuniary and business motivations vitiate his claim.

The third element requires the conduct to have caused severe emotional distress resulting in bodily harm. The harm must be "medically diagnosable" and "medically significant." *Bass v. Nooney Co.,* 646 S.W.2d 765, 772 (Mo. banc 1983); *Greco v. Robinson,* 747 S.W.2d 730, 735-36 (Mo. Ct. App. 1988). Young does not plead factual allegations in support of this element. He pleads only that he was caused "severe emotional distress" over "losing [his] home without good reason." [Doc. 1-2, p. 5, ¶ 19.]

Young's second count fails to state a claim for which relief can be granted.

### III.    Conclusion

Defendant Flagstar's motion to dismiss [Doc. 4] is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  August 1, 2014
Jefferson City, Missouri